980 So.2d 634 (2008)
Terrell PARFAIT
v.
TRANSOCEAN OFFSHORE, INC., and Shell Oil Products Co.
Nos. 2007-C-1915, 2007-C-1998.
Supreme Court of Louisiana.
March 14, 2008.
Colvin, Weaver & Cerniglia, Timothy W. Cerniglia, Homer, for applicant in 2007-C-1915 and respondent in 2007C-1998.
St. Martin, Williams & Bourque, Michael X. St. Martin, Conrad S.P. Williams, III, Charles Clarence Bourque, Jr., Houma, The Cochran Firm New Orleans, Darryl M. Phillips, New Orleans, for respondent *635 in 2007-C-1915 and applicant in 2007-C-1998.
PER CURIAM.[*]
After entertaining oral argument on whether to grant writs on the limited issue of the effect and propriety of the court of appeal's decree, we grant writs in part to resolve a difficult and novel issue of Louisiana law. Namely, we now determine the effect of an en banc judgment rendered by a court of appeal that has been unable to issue a majority decree regarding damages. For the following reasons, we now hold that, in such a situation, an en banc judgment that fails to reverse or modify a trial court's damages award has the effect of affirming the trial court award.[1]

FACTS AND PROCEDURAL HISTORY
Following a January 20, 2004 trial in this personal injury case, a jury found, inter alia, that pursuant to 46 U.S.C.App. § 688 ("Jones Act"), Transocean Offshore, Inc. ("Transocean") was 75% negligent for injuries Plaintiff suffered while working as a floor hand aboard one of Transocean's drilling rigs.[2] In accord with the jury's verdict, Plaintiff was awarded damages totaling $1,701,029.11.[3] After Defendants appealed, a five judge panel of the Court of Appeal, Fourth Circuit could not reach a majority judgment on all of the issues presented. Parfait v. Transocean Offshore, Inc., 04-1271, 05-0174 (La.App. 4 Cir. 1/05/07); 950 So.2d 8. This Court then remanded the matter for en banc consideration. Parfait v. Transocean Offshore, Inc., 07-0220, 07-0225 (La.4/05/07); 953 So.2d 57, 58. This en banc panel was also unable to render a decree reflecting a majority judgment on each issue presented in this case. Parfait v. Transocean, Inc., 04-1271 (La.App. 4 Cir. 8/10/07); ___ So.2d. ___, 2007 WL 2473252. Particularly, while several issues were decided unanimously and nine of twelve judges found no manifest error in the jury's finding that Transocean was negligent, there was no majority decree as to the damages amount Plaintiff was to receive:
As to the damages, six judges of the court (Chief Judge Armstrong and Judges Jones, Murray, Bagneris, Lombard and Belsome) would affirm the jury award of $1,701,029.11;
Two judges (Judges McKay and Love) would reduce the jury award to $1,312,979.11.
One judge (Judge Cannizzaro) would reduce the jury award to $712,029.11.
. . .
Three judges of the court (Judges Kirby, Tobias and Gorbaty) find the jury was clearly wrong in finding Transocean negligent and would reverse the judgment against it[.]
Id., pp. 2-3, Id., pp. ___-___.
On September 19, 2007, this Court once again remanded the matter and ordered the court of appeal to render a decree reflecting a majority vote on each of the issues presented, as required by La. *636 Const. Art. V, § 8(B). Parfait v. Transocean Offshore, Inc., 07-1816 (La.9/19/07); 964 So.2d 928. In its own Order, dated September 27, 2007, the court of appeal misconstrued our action as ordering its judges to change their opinions for the sake of a majority vote. Order No. 2004-CA-1271. Again failing to render a majority decree, the court of appeal left its August 10, 2007 opinion as originally written.
On November 1, 2007, because of the unique position in which the litigants in this matter have been placed, this Court ordered briefing and oral argument on the limited procedural issue of the effect and propriety of the August 10, 2007 opinion of the court of appeal en banc. The litigants subsequently argued before this Court on November 27, 2007.

DISCUSSION
La. Const. Art. V, § 8(B) provides that a "majority of the judges sitting in a case must concur to render judgment." Rather than reflecting an en banc majority decision for the instant matter, the court of appeal's August 10, 2007 decree reflects the view of only one judge (the opinion's author) that Plaintiff's damages award of $1,701,029.11 should be reduced to $712,029. See Parfait, 04-1271, p. 3, p. ___. Indeed, writing separately in numerous concurrences and dissents, six of the eleven other judges on the panel would affirm Plaintiff's damages award at $1,701,029.11, two would reduce the award to $1,312,979.11, and three would reverse the award in its entirety. Id., pp. 2-3, Id., pp. ___-___. This is simply not an executable majority judgment.
Responding to our remand, the court of appeal's Order has left its original opinion as written after misconstruing our action as an Order that each of its judges "chang[e] his or her opinion simply for the sake of reaching a majority vote on each issue[, thus] abdicating his or her constitutional responsibility as an elected member of the Louisiana Fourth Circuit Court of Appeal." Order No. 2004-CA-1271, at 1. This Court did not, however, order that the judges of the Fourth Circuit change their opinions in this case, nor did we order them to abdicate their constitutional responsibilities. On the contrary, we ordered the court of appeal to satisfy those responsibilities and exercise its adjudicative function to issue a decree that, in accordance with its constitutional authority to review cases, actually provides an executable majority judgment on each issue presented.[4]See La. Const. Art. V, § 8(B). The court of appeal's inability to provide such a judgment has left this Court to review a decision in which a majority of the sitting judges (nine of twelve) believe that Transocean should pay Plaintiff damages, *637 but no majority has been able to point to how much that award should be. Again, six of twelve judges would affirm Plaintiff's damages award of $1,701,029.11, two would reduce the award to $1,312,979.11, one would reduce the award to $712,029.11, and three would reverse the award in its entirety.[5] Thus, we are presented with a decision of the court of appeal that remains evenly split on the issue of whether to disturb the quantum of a jury's damages award: six of the twelve judges would uphold the jury's award in its entirety while the other six would reduce or reverse the award.
As stated above, the Louisiana Constitution dictates that "[a] majority of the judges sitting in a case must concur to render a judgment." La. Const. art. V, § 8B. Further, the Constitution provides that, "in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment." This provision suggests that a majority of an appellate court must concur before a trial court judgment can be modified or reversed.
Persuasive is La. Civ.Code art. 2324.1 (stating that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury"), and Louisiana jurisprudence, which has consistently held that much discretion is left to a judge or jury to assess damage awards, and has allowed such awards to be disturbed only when there has been a clear abuse of that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1977).[6] Given the great respect afforded to a jury's damages award, it would defy logic to allow that award to be modified or reversed by anything less than a majority of an appellate court.[7] As we are now presented with an *638 evenly split twelve judge en banc panel, no majority has concurred to modify the damages award and, thus, we hold that the award must stand as rendered in the trial court's judgment.
At oral argument, Transocean asserted that our previous decision in Butler v. Zapata Haynie Corp. provides guidance for how this Court should address the en banc split in the instant matter. 94-1171 (La.7/5/94); 639 So.2d 1186 (per curiam). Butler involved a different procedural posture than that presented here, however. In Butler, the plaintiff had alleged injury while working aboard the defendant's vessel. See Butler v. Zapata Haynie Corp., 92-71, p. 1 (La.App. 3 Cir.1994); 633 So.2d 1274, 1276. The trial court had entered judgment for the defendant, finding that no accident had occurred. Id. Thus, the trial court had awarded the plaintiff no damages whatsoever. On appeal, three of five of the court of appeal judges found that the evidence established that an accident had occurred and that the plaintiff was entitled to special damages. Id., at passim. However, these three judges could not agree on the amount of damages due. Id. Upon review, in a per curiam opinion, this Court held:
In the decree by the court of appeal, two judges would have fixed damages for the loss of earning capacity at $294,670, one judge would have fixed this item at $150,000, and the two remaining judges would not have awarded any damages. Accordingly, there were not three votes for the $294,670 award by the "majority" opinion. The highest award for loss of earning capacity upon which a majority of three judges concurred was $150,000[fn] and that must be the amount of the award in the judgment.
The judgment of the court of appeal is therefore amended to reduce the award for loss of earning capacity to $150,000.
[fn]: The votes by two judges for $294,670 included a vote for $150,000, although those two judges would have awarded more than the majority consensus figure of $150,000."
Id., p. 1; at 1186.
We need not presently address the propriety of this "vote-for-the-greater-includes-a-vote-for-the-lesser" approach,[8] as Butler did not involve a damage award that had been set by a trial court. Additionally and most significantly, a majority of the judges concurred that the plaintiff was entitled to an award of damages. As La. Civ.Code art. 2324.1 states that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury," and Louisiana jurisprudence has consistently allowed such awards to be disturbed only when there has been a clear abuse of that discretion, Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1977), it would be contrary to Louisiana law to allow a trial court's damages award to be modified with anything less than a majority of the judges sitting en banc.
*639 Lastly, this Court notes that, while Transocean was correct in pointing out at oral argument that Transocean's right to an appeal must be respected, see, La. C.C.P. art.2082 (stating that "[a]ppeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court"); see also, e.g., McCann v. Todd, 201 La. 953, 10 So.2d 769 (1942) (holding that appeals are favored in law and will not be dismissed on mere technicalities), that respect has been afforded. Transocean took its appeal to the court of appeal and was allowed to present its arguments in full. The burden of showing an error in the trial court's conclusions on the facts, however, rests with the appellant. Olivedell Planting Co. v. Town of Lake Providence, 217 La. 621, 47 So.2d 23 (1950). Since Transocean could not persuade a majority of the court of appeal that the jury's damages award should be reduced or eliminated, Transocean failed to satisfy this burden.
Accordingly, we now hold that, because the en banc panel of the court of appeal remains evenly split, no majority has concurred to reverse or modify the trial court's damages award and, thus, the effect of the court of appeal vote is to affirm the trial court's judgment on damages as rendered.[9] Remaining otherwise as written, the decree of the court of appeal shall now read as follows:
Judgment in favor of Plaintiff is reversed, in part, to dismiss his claims against Shell and to vacate the damage award. Judgment in favor of Plaintiff is amended, in part, to cast Transocean 100% at fault and award Plaintiff total damages in the amount of $1,701,029.11.
KIMBALL, J., concurs in the result and assigns reasons from the per curiam and concurs in the order.
VICTORY, J., dissents and assigns reasons.
WEIMER, J., dissents in part and concurs in part for reasons assigned by VICTORY, J.
HIGHTOWER, J., dissents from the per curiam for the reasons assigned by VICTORY, J., and concurs in the order.
KIMBALL, J., concurring.
In this unusual case, my opinion is that those judges of the court of appeal who found legal error in the trial court's exclusion of evidence regarding Mr. Parfait's previous injury settlement were incorrect. Once this case is reviewed under a manifest error standard of review, which I believe to be proper, I find no error in the trial court's analysis.
I would otherwise deny these writs.
VICTORY, J., dissenting from PER CURIAM, concurring in order.
In my view, the Per Curiam[1] signed by three justices of this Court suggests a solution that violates the Louisiana Constitution.
*640 Initially, I would have preferred to remand this case back to the court of appeal and again order it to issue a majority decree, as is its obligation required by La. Const. Art. V § 8(B). Understandably, this Court now has assumed the court of appeal's duty of rendering a decree stating the effect of the court of appeal vote.

The Per Curiam Decree Violates the Louisiana Constitution
Pretermitting the issue of the court of appeal's failure to enter a majority decree, I find that the Per Curiam abrogates the black-letter law of the Louisiana Constitution. La. Const. Art. V § 8(B) states:
(B) Judgments. A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment. (Emphasis supplied)
The Per Curiam opinion maintains that an even split of the appellate court "has the effect of affirming the trial court award." At p. 635. However, an even split of the appellate court is not a majority. The Per Curiam admits as much when it states, "because the en banc panel of the court of appeal remains evenly split, no majority has concurred to reverse or modify the trial court's damages award. . . ." At p. 639, and when it notes that the en banc panel of the court of appeal "was also unable to render a decree reflecting a majority judgment on each issue presented in this case" and that "there was no majority decree as to the damages amount Plaintiff was to receive . . ." At p. 635 (Emphasis supplied) If "no majority has concurred" as the Per Curiam asserts, then under La. Const. Art. V, § 8(B) no judgment can be rendered since "a majority must concur to render judgment."

The Butler Case
Yet, I find that a majority of the court of appeals has, in fact, agreed on a damage award. In Butler v. Zapata Haynie Corp., 94-1171 (La.7/5/94), 639 So.2d 1186, we noted that "the votes by two judges for $294,670 included a vote for $150,000, although those two judges would have awarded more than the majority consensus figure of $150,000." Thus, our rule, as reiterated in Butler, could be summed up as the greater award includes the lesser award. However, the Per Curiam today rejects this rule of law by attempting to distinguish Butler and in the process suggests a solution that violates the Louisiana Constitution.
While the Butler decision may not be a perfect solution, it at least follows the Louisiana Constitution in requiring that a majority of the court of appeal concur to render a judgment: "The highest award for loss of earning capacity upon which a majority of three judges concurred was $150,000 and that must be the amount of the award in judgment." (Emphasis supplied) Butler, supra.
Further, the rule recognized by this Court in Butler has been recognized by the Fourth Circuit Court of Appeal for the last thirty years. In 1977, then Judge Harry Lemmon applied the reasoning of Butler long before the Butler decision. Derbofen v. T.L. James & Co., Inc., 355 So.2d 963 (La.App. 4 Cir.1977) In that case a defendant appealed from a judgment for plaintiffs in the amount of $183,112.30. On appeal, two judges voted for plaintiffs in the amount of $1,494.00, two judges voted for plaintiffs in the amount of $199,637.50, and one judge voted for defendant. The court of appeal's judgment was for plaintiffs in the amount of $1,494.00. They explained:

*641 In our view there are two reasonable approaches to the decision that these votes result in the stated decree. One point of view is that since defendant sought relief by appeal, the effect of Judge Schott's vote, combined with our votes, is to grant that relief, at least to the extent of a reduction of. $181,618.30. Under this view the effect of Judge Schott's vote for the ultimate reduction (to zero) resulted in three votes concurring to reduce by $181,618.30 to $1,494.00, since a vote for a greater reduction encompasses a vote for a lesser reduction.
The other point of view is that there are four votes to award a judgment to plaintiffs, and the effect of the votes of Judges Samuel and Boutall to award judgment in the amount of $199,637.50, combined with our votes, is to award a judgment of at least $1,494.00, since a vote for a greater award includes by inference a vote for at least the lesser award.
Derbofen, supra. See also Lowe v. Gentilly Dodge, Inc., 342 So.2d 1231 (La.App. 4th Cir.1977).
Only a year ago, a five-judge panel of the Fourth Circuit was able to overcome a very similar problem by applying the principles of Butler in Vincent v. Vincent, XXXX-XXXX (La.App. 4 Cir. 1/10/07), 949 So.2d 535. There, three judges of the five judge panel agreed that the trial court did not commit manifest error by awarding a spouse permanent spousal support. However, the judges could not agree on how much or how long such support should have been awarded. One judge would have awarded permanent alimony of $7,000 per month, two would have awarded $3,000, and two would have awarded nothing. Further, of the three that affirmed the trial court and would have awarded something, the judge wishing to award $7,000 and one of the judges wishing to award $3,000 would have awarded support for a period of 5 years. The other judge (who would also have awarded $3,000) wished to award support indefinitely. Thus, by final decree of the court, and citing to Butler, spousal support in the amount of $3,000 was awarded because the $7,000 award included the $3,000 award, and it was set for a period of five years since an indefinite period of time necessarily included a period of five years. Vincent, supra.
In the present case, two judges of the twelve-judge panel would have awarded $1,312,919.11. Parfait v. Transocean Offshore, Inc., 04-1271, 05-0174, p. 2-3 (La. App. 4 Cir. 1/05/07), 950 So.2d 8. Six judges of the twelve-judge panel would have awarded $1,701,029.11. Parfait, supra. Applying our long-standing precedent in Butler, I find "the highest award . . . upon which a majority of . . . judges concurred" was $1,312,919.11, "and that must be the amount of the award in the judgment" since the votes by six judges for $1,701,029.11 included a vote for $1,312,919.11. Butler, supra.
Nevertheless, the Per Curiam today concludes that Butler does not apply since "Butler did not involve a damage award that had been set by a trial court." At p. 638. The Per Curiam places unfounded significance in the idea that an appellate court that sets damages initially (reversing a trial court's judgment for the defendant) is different from a panel that merely modifies those damages. I see no logical basis for distinguishing Butler on this ground.[2]
*642 Further, according to the Per Curiam, it seems that we may have two rules, depending on who prevails at the trial court level. If the trial court awards zero damages, Butler will apply and the Court of Appeal can use the "greater includes the lesser rule." If the trial court does award damages, the "greater includes the lesser rule" should not apply. I see no logical basis for having differing rules which depend on who prevails at the trial court level. In my view, Butler should apply across the board.

Constitutional History
The Per Curiam also reasons that since La. Const. Art. V § 8(B) provides that a simple majority of an initial three-judge appellate panel cannot overturn a trial court decision, the trial court's award should stand if the court of appeal is evenly divided. This approach, however, is not only misguided and runs against the history behind La. Const. Art. V, § 8(B), but violates its very language that "a majority must concur to render judgment."
Justice Tate admitted at the Constitutional Convention in August of 1973 that a trial court's decision is essentially counted as a vote during the initial three-judge court of appeal panel:

Mr. Lanier Now, in the situation where you have a three judge panel that reverses a finding of fact of a trial court judge by a two to one vote in essence do you not have the situation where four judges have looked at the case and two have decided one way and two have decided the other way?

Mr. Tate No doubt about it.
La. Const. Conv., Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, (August 16, 1973) Volume Six. p. 758. In the case of a tie (two appellate court judges to overturn the trial court, and one appellate judge and the trial judge to uphold the trial court ruling), the case is then heard by a five-judge panel.
However, there is no similar provision for a larger court of appeal panel. Indeed, a five-judge panel can overturn a trial court decision by a simple majority vote. La. Const. Art. V § 8(B). Therefore, we may assume that while the redactors of the constitution did wish to count the decision of the trial court as a vote at the initial three-judge panel, they felt no need to give such stature to the trial court's decision when the case is reheard before a larger panel. This mitigates against the trial court ruling becoming the judgment by default when the larger panel of the court of appeal is evenly split.

Conclusion
In my view, today's Per Curiam opinion suggests a solution which violates the Louisiana Constitution while attempting to distinguish Butler. Even though the theory behind Butler has been used almost as long as we have had our present constitution, the Per Curiam gives no valid reason not to follow Butler, nor does it logically distinguish that decision. I firmly believe that the same rules should apply no matter who prevails in the trial court and that the rule we espoused in Butler should apply here. While Butler may not be a perfect solution, at least it follows the Louisiana Constitution in that it provides that a majority must agree to render judgment. For the reasons expressed herein, I respectfully dissent from the Per Curiam. However, I agree with the order issued along with the Per Curiam that allows the parties to file a writ application raising any errors in the judgment of the court of appeal as clarified by this Court.
*643 WEIMER, J., dissenting in part and concurring in part.
I agree with the reasons assigned by Justice Victory.
HIGHTOWER, J., dissenting and concurring.
For the reasons assigned by Justice Victory, I respectfully dissent from the Per Curiam opinion. Similarly, I would have yet again remanded the matter to the court of appeal. Further, I concur in the order issued this date accompanying the Per Curiam opinion.

ORDER
Because our disposition in the accompanying per curiam opinion on the construction of the court of appeal's judgment changes the procedural posture of this case, we decline to consider the remaining assignments of error presented in the parties' writ applications in Nos. 2007-C-1915 and 2007-C-1998. However, within fourteen days from the date of this order, the parties shall be permitted to file applications raising any errors in the judgment of the court of appeal, as clarified by the accompanying per curiam opinion handed down this date.
KIMBALL, J., dissents and would deny the opportunity for filing of additional writ applications based upon the parties; assurances at oral argument that the only procedural remedy now available is rehearing.
KNOLL, J., dissents.
NOTES
[*] Retired Judge Lemmie O. Hightower, assigned as Associate Justice Ad Hoc, sitting for Associate Justice Chet D. Traylor, recused.
[1] An accompanying order issued this date is directed toward the remaining assignments of error asserted in the parties' writ applications in Nos. 2007-C-1915 and 2007-C-1998.
[2] The jury found Co-Defendant Shell Offshore, Inc. ("Shell") 25% negligent for these injuries.
[3] Neither Transocean nor Shell appealed the jury's finding of no negligence on the part of Plaintiff. Consequently, the court of appeal's subsequent unanimous finding that Shell had not acted negligently required that Transocean be held 100% liable for this amount.
[4] This Court has previously remanded a case in a similar situation. In justifying this action, we held the following:

La. Const. art. V, § 8(B) requires that "a majority of the judges sitting in a case must concur to render judgment." A majority of a thirteen-judge court is seven, and there were not seven votes to render a judgment either affirming or reversing. Therefore, the purported judgment of less than a majority of the court was invalid. . . .
Accordingly, the case is remanded to the court of appeal to render a judgment by a majority of the elected judges.
Pattan v. Fields, 95-2342, p. 1 (La.9/25/95); 661 So.2d 142, 142 (per curiam).
Of course now, after sending the case sub judice back with instructions to render a majority decree on the damages award, the court of appeal has still been unable to do so. Unfortunately, this development presents a new complication that can arise in a Pattan situation. Accordingly, this Court must now go a step further than it did in Pattan to provide a resolution in this matter.
[5] Further complicating this matter is the fact that, of the nine judges that held Transocean liable for Plaintiff's damages, five of these judges also found legal error in the trial judge's exclusion of evidence of a previous accident award to Plaintiff, thus necessitating de novo review of the damages award. See Parfait v. Transocean Offshore, Inc., 04-1271 passim (La.App. 4 Cir. 8/10/07); ___ So.2d. ___, 2007 WL 2473252. Assuming, arguendo, that all three of the judges that did not find that Transocean was liable for Plaintiff's damages would have conducted such a de novo review had they found liability, there would have been a majority of the judges on this panel (eight of twelve) that found de novo review of the damage award necessary. However, two of the five judges that did conduct de novo review in this matter still found the jury's award proper as rendered. Thus, again, at the end, this Court would be presented with six judges who would affirm a jury's award and six who would modify or reverse it.
[6] Indeed, in reviewing general damages, "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
[7] This Court has previously acknowledged that a split en banc decision of the court of appeal did not result in a reversal of prior precedent from that court. See Hondroulis v. Schumaker, 553 So.2d 398, 410 (La. 1989) (on rehearing). In reviewing the procedural posture of that case, we stated:

Plaintiff appealed, and the court of appeal affirmed. The opinion of the court signed by two judges held that the doctor's disclosure . . . fulfilled the requirement of informed consent. . . . Three judges of the court of appeal "reluctantly concur[red]," because the court of appeal, en banc, by a 6 to 6 deadlock, had refused to overturn the decisions relied upon by the two-judge lead opinion. In the absence of the precedent affirmed by deadlock, they would have held. . . .
Id.
By analogy, if a split en banc decision cannot reverse prior decisions of that appellate court, then a split en banc decision cannot reverse or modify a judgment of a trial court.
[8] We do note, however, that this approach could allow excessively large dollar-amount discrepancies. For example, suppose that six of the twelve judges on the Parfait panel had voted to affirm the jury's damages award as rendered, but five had voted to reverse the award and one had voted to reduce the award and pay only Plaintiff's past medical expenses, which total $5,994.11. It would be difficult to imagine that the six judges that voted to award Plaintiff $1,701,029.11 would, by default, have also "voted" for an award that is $1,695,035 (some 99.65%) less than their preferred award.
[9] To the extent that this holding conflicts with Derbofen v. T.L. James & Co., 355 So.2d 963 (La.App. 4 Cir. 1977), writs denied, 357 So.2d 1156, 1168 (La. 1978), cert. denied, 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978) (wherein the trial court had awarded the plaintiff $183,112.30, but three of five appellate judges agreed with a decree reducing that judgment to $1,494.00 because, while no majority of the five could agree on a proper quantum, four of the judges would have allowed an award of at least $1,494.00), and any similar cases that have held to the contrary, those holdings are now overruled.
[1] The Per Curiam signed by only three justices does not decide the law; Justice Kimball merely concurred in the result.
[2] I would also note that the Per Curiam offers no reason why the procedural difference between Butler and this case should matter. It only notes that it does. However, regardless of who prevailed in the trial court, the constitutional provision stating that a majority must concur to render judgment is exactly the same.