6 So.3d 877 (2009)
Vera M. RAINEY
v.
ENTERGY GULF STATES, INC. and Mike Case.
No. 2006 CA 0816R.
Court of Appeal of Louisiana, First Circuit.
February 13, 2009.
*878 Thomas More Flanagan, Stephen M. Pesce, Harold Jude Flanagan, New Orleans, LA, John A. Braymer, Baton Rouge, LA, for Defendant/Appellant Entergy Gulf States, Inc.
Russell W. Beall, Baton Rouge, LA, for Plaintiffs/Appellees Joanne Mays and James McAllister.
Leonard Cardenas, III, Baton Rouge, LA, In Proper Person as Intervenor.
Before CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, and WELCH, JJ.[1]
PER CURIAM.
In an August 15, 2008 per curiam, this court sitting en banc decreed that the "trial court judgment stands" because this court had no executable majority to support a judgment. Rainey v. Entergy Gulf *879 States, Inc., 06-0816 (La.App. 1st Cir.8/15/08), 993 So.2d 735. The supreme court then granted Entergy Gulf States, Inc.'s writ application, and in a December 12, 2008 per curiam, the supreme court remanded the matter to this court. Rainey v. Entergy Gulf States, Inc., 08-2233 (La.12/12/08), 996 So.2d 1058. Therein, the supreme court directed that the judges who had declined to reach the merits of the appeal because they found this court lacked jurisdiction "should now reach the merits ... in order that the appellate court may reach an executable majority judgment." Id., 08-2233 at p. 2, 996 So.2d at 1058. Those judges have complied with the supreme court's instructions, and a majority of the judges of this court now either agree or concur with Judge Kuhn's August 15, 2008 concurring opinion. Rainey v. Entergy Gulf States, Inc., 06-0816, 993 So.2d at 741. Thus, a majority of the judges of this court find the trial court erred in concluding that Entergy Gulf States, Inc. was not Vera M. Rainey's statutory employer at the time of her fall at Entergy's Willow Glen facility.
Accordingly, that portion of the trial court's May 31, 2007 judgment, which denied Entergy's affirmative defense "of Vera Rainey's status as Entergy's statutory employee" is reversed, and the remaining portions of the judgment are vacated. Further, all claims of James A. McAllister, Joanne Mays, and Leonard A. Cardenas, III, against Entergy are dismissed.
REVERSED IN PART, VACATED IN PART, AND RENDERED.
GUIDRY, J., concurs.
WHIPPLE and PETTIGREW, JJ., dissent and assign reasons.
CARTER, C.J., and DOWNING, J., dissent for the reasons assigned by WHIPPLE, J.
WELCH, J., dissents.
WHIPPLE, J., dissenting.
I disagree with the result occasioned by the per curiam, reversing the trial court's judgment, which held Entergy Gulf States, Inc. ("Entergy") liable for the damages sustained by plaintiff, Vera M. Rainey, on the basis that Entergy established the existence of a valid, written statutory employer contract between Entergy and ABB, thus establishing Entergy as Rainey's statutory employer.
Entergy asserts the trial court erred in not finding it immune from tort liability, asserting it was Rainey's statutory employer and that a valid written contract existed between Entergy and ABB recognizing this relationship. As such, Entergy contends the sole remedy available for the injuries sustained by Rainey is workers' compensation benefits pursuant to La. R.S. 23:1032. Because Entergy seeks to avail itself of tort immunity under La. R.S. 23:1032, Entergy bears the burden of proving entitlement to the immunity. Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188, 191. Moreover, the statutory scheme that provides for a statutory employer defense must be strictly construed against the party who seeks the immunity. Weber, 635 So.2d at 193.
Louisiana Revised Statutes 23:1061 A(1) provides that when a "`principal' ... undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as a `contractor', for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032...." Under La. R.S. 23:1061 A(1), "work shall be considered part of the principal's trade, business, or occupation if *880 it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Louisiana Revised Statutes 23:1061 A(2) recognizes that "[a] statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer."
Prior to 1997, La. R.S. 23:1061 did not require a written contract to exist between the "principal" and "contractor" in order to establish a statutory employer relationship. In 1997, the Louisiana legislature amended La. R.S. 23:1061 to add subsection A(3), which provides, in part:
Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. (Emphasis added.)
See 1997 La. Acts, No. 315, § 1. In that same subsection, the legislature also added a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees when a written contract exists between a principal and a contractor that recognizes the principal as a statutory employer. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services. La. R.S. 23:1061 A(3).
During the August 1, 2005 trial on Entergy's statutory employer defense, Rainey stipulated that the work performed by her and ABB at Willow Glen on February 15, 1999 was an integral part of Entergy's trade, business, or occupation. Therefore, the dispute in this appeal is whether a valid written contract, which recognizes Entergy as Rainey's statutory employer, existed between Entergy and ABB prior to the February 15, 1999 accident.
Entergy notes that in 1992, it and ABB entered into a "General Operations Agreement for Contracted Services," bearing contract no. FHA00166 ("General Operations Agreement").[1] Entergy contends the General Operations Agreement met the necessary requirements then existing to allow Entergy to be considered the statutory employer of ABB's employees.[2] Following *881 the 1997 amendment to La. R.S. 23:1061, which specifically requires the principal and contractor to enter into a written contract that recognizes the principal as a statutory employer, Entergy purportedly sent ABB a written addendum to the General Operations Agreement.
However, the intriguing question presented herein is whether Entergy established that the addendum was validly and timely executed before Rainey's accident at issue. I agree that the trial court committed legal error in concluding that the written contract contemplated by LSA-R.S. 23:1061(A)(3) must be signed by both parties and that the addendum thus was not validly executed herein because it was not signed by Entergy. However, I am unable to find, on the record before us, that Entergy satisfied its burden of proving the existence of an authentic timely executed written addendum to its contract with ABB, or that it had been executed prior to Rainey's accident herein.
Pursuant to the Louisiana Code of Evidence, "[t]he preliminary determination by the court that evidence is admissible does not limit the right of a party to introduce evidence relevant to weight or credibility at trial." LSA-C.E. art. 104(D); see Rowe v. State Farm Mutual Automobile Insurance Company, 95-669 (La.App. 3rd Cir.3/6/96), 670 So.2d 718, 728 & n. 14, writ denied, 96-0824 (La.5/17/96), 673 So.2d 611. In the instant case, the circumstances surrounding the discovery of an undated addendum just days before the trial date are questionable at best. The trial court noted this issue in its reasons for judgment, stating that "there existed a purported written addendum to the original contract, stating that Entergy intended to be a statutory employer, even though there is some question as to the circumstances in which the addendum to the original contract was found." (Emphasis added). However, because the trial court ruled, albeit incorrectly, that the addendum did not meet the legal requirements of a written contract, it did not reach the issue of whether the addendum had in fact been executed prior to the accident in question. To compound this error, the majority now rules on the merits without allowing the trial court to consider (and correct, if necessary) its error.
Where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court is obligated to make its own independent de novo review of the record and determine a preponderance of the evidence. However, where the weight of the evidence is so nearly equal that a first-hand view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Salassi v. State, Department of Public Safety and Corrections Administrative Hearing Section, 96-0321 (La.App. 1st Cir.11/15/96), 684 So.2d 1014, 1016.
In the instant case, Entergy produced the addendum a mere two days before the second trial setting, after having denied its existence during discovery. Also, Richard Duplantier, Jr., counsel for Entergy throughout the first trial, testified by deposition that both in-house counsel for Entergy and in-house counsel for ABB supplied Duplantier with copies of the contracts, and that the copies supplied by both were the same. Notably, however, none of the contracts or addendums *882 provided by Entergy or ABB to counsel contained the necessary language to support a statutory employer defense.
Moreover, it further appears that Entergy's in-house counsel also made efforts to determine whether there was an addendum containing the statutory employer language. At his request, Cara Carpenter, the Entergy employee responsible for filing contracts, searched for any addendum in the ABB file, but found no such addendum. Only later, shortly before the new trial date, did Carpenter suddenly discover the February 27, 1998 letter, on top of a "working desk" or "working table" that was located outside of an employee's office at Entergy's offices. No reasonable explanation was given by any of the individuals involved as to how the document came to be on that desk or where the document had been throughout the pendency of this suit.
Additionally, while the letter in question was allegedly signed by Ronald Beckman, vice-president of ABB, he admitted that he did not date the document. Moreover, he admittedly had no personal knowledge as to when the letter was signed, who actually dated the document, or whether the date written on the document was the date on which he signed it. Also, Michael Pennison, an Entergy procurement specialist, testified that Entergy used a computer program, the Contract Management Information Service, to internally track contracts and their status. According to Pennison, if Entergy had received a signed contract addendum from ABB, it would have been reflected in the "comments" or "scope of work" field of the program. However, the program did not indicate that a signed copy of the addendum was returned to Entergy. These facts all cast serious doubt on the reliability of the addendum and Entergy's assertion that it was signed prior to the accident in question.
The key issue in this case is the nature of the relationship between ABB and Entergy. On the record before us, I find that Entergy failed to establish by a preponderance of the evidence that the addendum was signed by ABB and returned to Entergy before Rainey's accident.
Accordingly, I dissent from the result reached by the per curiam which reverses the trial court's judgment in favor of Rainey and would affirm the trial court's judgment. Alternatively, I would remand to the trial court for a full and reasoned determination of this critical issue, given the obvious and important credibility issues that must be resolved.
Thus, I respectfully dissent.
PETTIGREW, J., dissents, and assigns reasons.
PETTIGREW, J., dissenting.
I find no legal or manifest error on the part of the trial court and would affirm the judgment of the trial court.
NOTES
[1] The Hon. Jefferson D, Hughes, III, J., recused himself from consideration of this matter.
[1] Entergy entered the contract in its former name, Gulf States Utilities Company.
[2] At the time the contract was entered into between the parties, La. R.S. 23:1061 A provided:

When any person, in this Section referred to as "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.